of America, oral argument not to exceed 15 minutes per side, bill to serve unilaterally. All right, I'll just remind the court that I'm reserving two minutes for rebuttal, although it looks like the time on here is correct. Good morning, your honors. May it please the court, Philip Serafini representing Ms. Bobby Jackson, and it's our position that this court should overrule the summary disposition granted by the district court. As the complaint was timely filed in this matter because the six month time limit to file suit did not run when it's undisputed that the notice of denial of claim was never delivered in this case. I'll take a few minutes to discuss a couple of the cases that the government relies upon in their brief, because it's obvious that this court always reads my brief, so I don't need to focus on that. The government cited the Bertie, Zender, Pascarella, Carr, and even when the notice of denial of the claim under the FTCA was admittedly never delivered. However, none of these cases are on point with the case before this court. Let me go back to what you started with. Did you not say that we should reverse because the notice was not received? Because the notice of denial was not delivered and the- Okay, so you say delivered. Yes. I don't remember whether you said received. So, we've either got received or delivered. The statute doesn't say received. It doesn't say delivered. It says mailed. I appreciate that, your honor. But the interesting thing here is that we have to look at the purpose of the FTCA. It's for purposes to have fair administration of the claims. And it is not to dismiss based on technicalities or procedural defects. And- But you're trying to juxtapose what you say is the purpose against the fact that the Federal Tort Claims Act itself is a waiver of sovereign immunity. And the cases are clear that when we're interpreting a sovereign, in this case the federal sovereign, waiving its sovereign immunity, we interpret that strictly. They mean what they say. Your honor, I'm not interpreting the- I'm not putting my spin on what the purpose of the FTCA is. I think that there is two cases that I've cited in my brief. And it's the Starr case is one of them that, in the Van Fossen case is the other, that the purpose of the FTCA is not to set up these traps for the unwary. And I guess my position with the court would be, is if you look at each one of the cases cited by the government, Bertie, Zander, Pascarella, Carr, Ellison, in every one of those cases, they did say that the time limit started from the time that the notice was mailed. But in every one of those cases, the notice got there. They had some missteps along the way in a couple of those cases. And Bertie, they sent it to an attorney's, the attorney's original office. Not unlike in this case. The attorney had moved. The certified letter came back. I'm still back to how, it seems odd that we, that you're complaining about the conduct of the government. When the statute says mailed, they did mail it. And they mailed it to the address that they were given by the only registered attorney in the case on behalf of the claimant. I go back to what do we look at in the prior cases where these situations have come up where the letter was not actually delivered and the government knew it. And in this case, they knew it. I, I find it amazing that the government continues to start sentences in their brief or paragraphs in their briefs with the scenario of if the plaintiff really didn't get the notice. There's no doubt that the notice was not delivered. There's no doubt we didn't get it. And there's no doubt we're not clairvoyant. So there's no way that we could know that the six month time limit to file suit had started running because the notice was never delivered. And if the government didn't know that, maybe we'd be talking about a different situation. But the government did know that. They admit that they got that certified letter back and then threw the file and didn't do anything further to place anybody on notice. A previous phone call had been made to my office. What, and they could certainly do that. Where do we look to find duty to do something further after they've complied at least with the literal text of the statute? I think you look to the Verity case and see what they did in that case, what the government did there, and why it was appropriate to say that the date of the mailing, the date of mailing, the day the notice was sent out to begin with, was the appropriate date to start the six month running. And in that case, it was sent to the attorney's office, it came back. They re-sent it to another office for the attorney, and then they sent it to the plaintiff themselves. And so in that case, they did everything they could to make sure that the notice was actually communicated. Try one more time. I'm sorry. Where do I find something that imposes a duty to do that? I'm not questioning whether the government has or has not done more than the statute requires in other cases. I assume that they have. But where do we look to find a duty to do something that they fail to do in this case? I think that if you're asking me, where in the statute is that duty? I will tell you that that statute does not set forth that duty. I think you have to read the statute and the purpose of the act together and say, what do we take from the cases that have interpreted this act and what's the purpose of it, and look at the situation and say, is this what the government's required to do? And then you go to the Lightfoot case. It's not in the statute. Is there a regulation that imposes that duty? There's not a regulation that I've been able to find to impose that duty. It's not in the statute. It's not in the regulation. Is there a case that says they have a duty to do that? Not a case where the facts say that they did do it, but rather a case that says there's a duty to do it. Pretty simple. Yes. The Matos case that I cited. Makos? Matos, M-A-T-O-S. The Matos case cited in our brief, the certified letter sent to the council was returned undelivered, and they've indicated that it did not constitute valid notice or trigger the six-month time limitation to file suit. And the Lightfoot case, I think, also supports that reading of the FTCA. The Lightfoot case stated that the mailbox rule does not apply to the FTCA, and that's effectively what the government wants this court to adopt. So say, as long as we put it in the mail once and it comes back, even though we know nobody could possibly know that the six-month time limit to file suit had been triggered, that's sufficient. Well, of course, your client and his lawyer, whoever it was at that time, knew that if once you file your claim and the government doesn't take any action within six months, you can file. You don't have to wait for that notice, right? That's true. But the So that happened. And this went on for another couple years, right? It did happen, and it went on for another, I would say that if I'm looking at the time frame correctly, if I remember when the notice of claim was sent in, probably a year and a half. You're absolutely right. But the case law is very clear on this point, that without the notice of denial, then you can wait indefinitely to file suit. And it's appropriate under the FTCA, but we did not wait indefinitely to file suit. The suit was actually filed within three years of the claim. What's the best case on that, that you can just wait till infinity if it's not received? I've cited two cases in my brief, Your Honor, that says that you can wait to file suit, actually three, that McAllister case, the REO case, and the Parker cases, that you can wait indefinitely to file suit. But we didn't do that. We filed within three months of when we would have had to have filed had we ever gotten the notice. We filed within three years of the claim, and I filed within one year of the phone call to my office indicating to me that they were still considering the claim. And the purpose of the FTCA is to settle these matters without getting into court. And so when a phone call is made to my office indicating that they're still interested in talking about this matter or are still looking into this matter, I'm going to let that process run out. That was the same call where they asked you to send in, they asked you to send something in, right? That's true. They wanted me to send in another notice of claim, which I did not do. And you didn't do it? No, because it was past two years at that point. So I'm not going to open the door to an argument that I've sent in a notice of claim that's untimely, because it would not have been within the two-year period. And they clearly had my information, and that was not the import of the phone call. Really, that's the reason you didn't respond to what they asked you to do? They wanted me to send in another notice of claim, and they already had a notice of claim. You didn't send the first one in, did you? I did not send the first one out. I work with that firm all the time, though. In this case, it was turned over to me to handle the no-fault claim and then assume the third-party action against the government. So they had my information. My mindset was, you have to have my information. I'm assuming they called the Gersten firm and got it, because there's no other way they could know I was involved in the case and call my office. And so with my... What is the court involved in, in Matos v. United States? I should know that, but your brief doesn't tell us what court that is. Puerto Rico District, is it not? Yes, it's the District of Puerto Rico, yes. Has any other court followed this District of Puerto Rico 2005 decision? I haven't found any other decision on this point, one way or another, to be honest with you, Your Honor. Not in support, nor criticizing it. I think this is a relatively unique situation. I don't think it comes up very often. And I think that in this particular case, where there's no dispute, where the denial letter was never received by anyone, why should the claimant be treated any differently than the government is treated in reverse? If there isn't any evidence that the claim is received by the government, then the mailbox rule doesn't apply for the government. And it should go the same in reverse. But I'll take that as my opportunity, because my time is running out, to turn into the equitable tolling argument. The second part of this is, quite honestly, even if the court finds that the six-month time limit ran because they simply put it in the mail, and it came back undelivered, even though everybody knows that there's no way we could have known that that notice was delivered, the government argues that the FTC is not subject to equitable tolling. This court, this circuit, is clear on that issue. The Glarner case, Glarner v. U.S. Department of Veterans Administration, has said that FTCA is subject to equitable tolling. It's the same thing that happened with the Douglas case, which is also a Sixth Circuit case. The position was adopted by the Third Circuit in the Artiga case, and the Seventh Circuit in the Santos case. These cases represent the position of the Sixth Circuit. The government's only response is to urge this court to rely upon the Rogers case, which was overruled in Glarner. In fact, even the Ninth Circuit has now aligned with this circuit's opinion in Marley v. U.S., which was a case cited by the government in an en banc published opinion in Wong v. Beebe, where they held that the limitations are subject to equitable tolling, as it's a non-jurisdictional claim processing rule that is subject to the presumption in favor of tolling set forth by the Supreme Court at Irwin v. Department of Veteran Affairs. So when we look at that situation, as my time's running, I'm going to jump to what are the standards then for equitable tolling? If you have a case that shows that equitable tolling takes place when the government sends it to an address that apparently is not used anymore, like our situation here, what's the best case on it? I don't, I have not been able to find another case that I think goes to this issue, and I don't believe the government has either. I think this is a unique situation, because I really believe that in the cases, the government does what they did in the Bertie case, or in the Zender case, or in the Pasquarello case. They get the notice delivered. They either send it to another address for the attorney, or they send it to the plaintiff themselves, and all of those things could have been done here. And I understand. Did anybody attempt to send a change of address to the government so that the government would know from this first claim? I don't believe that the Gersten firm sent a change of address to the government when they moved. They have submitted an affidavit that was part of the lower court record that they did a change of address, as you can imagine, a law firm is not going to simply pick up a move, they have a lot of attorneys in that firm, they don't just pick up a move without doing a change of address. And the government's position is, is that it came back with no ability to, with no address and no ability to send it to them. It seems more curious to me in terms of this equitable tolling, that not only didn't they notify the government they changed their address, but then arguably, at least more importantly, when they were no longer handling the case and it was transferred to somebody else, apparently you, that neither they nor you ever documented that with the government. I don't understand that. I oftentimes work with that firm, Your Honor, and I will do that in cases where I will step in and work with them on the case, and maybe the primary attorney handling it, and information and material will still go to them. And my point... But wait a minute. So were you then, did you replace them as not only the primary attorney, but the only attorney after they passed the case off to you, or were they still the primary attorney and you were helping them out? I would say it's the other way around. Which? I was the primary attorney and they were still involved in the case. It was their case, they signed up, and I was primarily handling it along with that firm. That's the situation. And if the notice had gotten to that firm, it would have immediately gotten to me. It was their case. The case was their case. They were going to have you assist them, and between the two of you, you were going to do the lion's share of the work. Pretty much, all of it. Because I had assumed the no fault part of her case. She had a no fault claim for damage under the Michigan No Fault Act. And my point, I think, to the Honor, and I... So that would explain then why they wouldn't notify the government that you had replaced them. Right. Because you hadn't. Right. We work on those cases together. But you're saying... I work under their fee agreement. I'd never change that scenario. I'm sorry. Okay. I'm getting confused now. I thought that your claim is that they must have told the government because the woman called you. They had to have told the government that I was primarily handling the case because there's no other way she could call my office. But why should the government have a duty to send something to you if the other firm is still the one that's primarily responsible for the case, whether you're going to do the lion's share of the work or not? That is just not the way the law works. I'm not saying that, Your Honor. I'm saying that if the government had sent the notice to the Gerson firm, I would have been notified immediately. If they sent it to my client, I would have notified immediately. And we would have taken the steps to file that complaint within the six month period of time. My complaint is not that they didn't send it to me. My complaint is that they didn't send it to anybody. Okay, so are you just, I mean, we know that it came back undelivered, right? Absolutely, the government admits that. Okay, so they did send it. Saying they didn't send it to anybody is preposterous. They sent it. You're complaining that they didn't do something when it came back undelivered. I'm sorry for mixing words. It wasn't delivered to anyone. And that's the point I was really trying to make. I did not attempt to mislead this court. If you need my brief, you will read that I said it was not delivered. It wasn't communicated to anyone because they only sent one letter and that one letter- Okay, so the only other address they had was your client's address, right? That's correct, although certainly both firms are in the bar journal. The Gerson firm's in the bar journal. The attorney's in the bar journal. They had the phone number. They certainly could have called them. But they certainly had Ms. Jackson's address. And as in the Bertie case or the Pascarella case, they could have sent it right to the client and at least communicated notice that way. And this is really a very fact-specific scenario. And I know that your honors want me to come up with that case to give you the reliance. And if I had that case, we probably wouldn't be here. Because I don't believe that this has happened before, other than in the Matos case. That's the only case that I've been able to find, and I think the government's been able to find it, that is on point with this scenario. Because in the other cases like this, they gave them- Fair enough, you'll have your rebuttal. The letter. Thank you. May it please the court, your honors. Andrew Levensey on behalf of the United States in this matter. So counsel, if something comes back undelivered, and part of the claim form includes the injured person's address. Why not send it? I mean, how do you just sit on it, knowing that it wasn't delivered? Well, there's nothing in the record indicating that it was necessarily sat on. We've been unable to locate the paralegal who handled the claim. And while there's nothing in the record saying she did something, there's nothing saying she didn't. But to answer your question as to why we didn't send it to the claimant, the claims are adjudicated within the office of general counsel or whatever the appropriate term is for the counsel's office for immigration and customs enforcement. The individual adjudicating or handling the claim is a paralegal specialist. The ethical obligations of the attorneys for whom she worked apply to her as well. As a general matter, the immigration and their legal office with a represented party. It'd be good to send one to each one, right? I mean, it'd be a nice practice in that way. Everybody knows that, and then they can't complain. In hindsight, I understand the question and why it's raised. You're saying that that would be, that sending the notice of denial or  I'm not saying it would. I'm saying as a practical matter in this situation, that's why they don't, out of concern for communicating with a represented party. Yes. And when, if you look at the notice of claim submitted. Is there a practice when something comes back undelivered? In immigration and customs enforcement or any government agency. So, and I guess the short answer to both of those scenarios is, I don't know and there's nothing in the record on that point. Nothing in the underlying affidavits or evidence submitted before the district court touched on what the general practice might be in a hypothetical situation when a letter is returned undeliverable. Mr. Serafini argues that there aren't any other cases because he believes that the government routinely does something after it comes back undeliverable to make sure that it then gets delivered to the claimant or somebody else. Your position is, that's not in the record. Correct. Nor is there any, nor am I aware of any regulations with ICE or any other agency prescribing what the agency is to do. In Bertie, the case from the 1980s when the VA did send to the claimant. I would note that in Bertie, the first thing they did was send it to the lawyer of record's new address. How did they know the lawyer of record had a new address? Because when it was returned to them, the new address was provided to the agency. That didn't happen here. That's the fault of the post office then, you're saying? Pardon? Who'd they get that information from, the post office? It was. Another government agency, unfortunately. It is, a quasi-government agency. But the, so the point is, is in Bertie, they were provided, affirmatively provided that new address of counsel, and therefore sent it. Would it be easy enough for the paralegal just to look up on a computer or several forms or books to find the new address of a firm like that, right? In this situation? It would have been done when it came in. Just say, well, here's the address. Here's a new certified letter. In this situation, with the firms involved, that's probably true. But you have to understand, you know, lawyers close, move, change address. They may be large firms or small firms. This is a paralegal in Washington, D.C. with no familiarity with these firms. Who is handling hundreds, if potentially thousands of claims. And it gets back to, on the issue, really, and I think the issue that Judge McKeek touched on is the most important one. Really on the issue of equitable tolling, not as to whether the government, as a matter of statutory interpretation, complied with the statute. But whose duty is it? Whose burden is it to ensure that the government agency knows the proper address for the attorney who signed on the administrative claim form that that attorney in that firm represented the plaintiff in this case, the appellant in this case? Is it that attorney's burden to inform the agency of an office move? Is it that attorney or new attorney's burden to inform the agency of a new attorney of record handling the case? Or is it that agency's burden to familiarize itself with the bar journal of the various 50 states? Or to inquire as to changes of address or email address or telephone numbers? And I would submit that it is incumbent on the claimant to provide that updated information to the agency. What if they had a change of address that didn't work on this letter? That it didn't get forwarded? Yeah. Well, I mean, that is what happened here. And again, I guess when it got returned, when it was returned to the agency, you know, in some instances, a forwarding address is provided. In some instances, it's not. Are you asking whether the burden should change in that circumstance? Are you asking? I'm saying, so let's say you have a situation where the law firm gave a change of address form to the post office and 97% of the mail was forwarded and this was part of the 3% that wasn't forwarded. Well, I guess, are you asking in this question the context of whether the government complied with the statute or whether the court should apply equitable tolling? Equitable tolling. Okay. I guess that goes to the issue of whether they were reasonable in remaining ignorant of the filing requirement. And I would concede that it is one factor amongst the others that I've already mentioned on the issue of duty or burden. It is one factor for the court to determine whether the claimant appellant here was reasonable in remaining ignorant of the requirement, whether they were affirmatively notifying the agency of an address change. I also think, though, that your question touches on whether the claimant appellant was diligent in pursuit of her rights in this case. Because after the claim was submitted, they could have filed suit within six months. They chose not to. Twenty months passed, and they still chose not to. Well, when was that phone call? That phone call was in approximately February of 2011. Which was well over? The six months? Yeah. Yes. Over a year? Correct. Almost a year and a half. Right. And the claimant still waited not only six months, additional months, seven months. In September of 2011, the time period expired. They waited until January of 2012. And so I know your question was about what happens when the Postal Service doesn't forward, even if a forwarding order is in place. And we'll assume one was for purposes of this case. I think that is one factor for the court to consider amongst the others on those two issues. But there's also a practical reality that some of these agencies don't get around to it for well more than six months. And if you don't feel that you need to push the matter, maybe your damages are still developing, whatever, there's no need to push the matter. You have a right to wait until six months after it's denied. And in this case, when was it sent? In March of 2011. Okay. So that's almost two years after. I mean, it's not unreasonable to have waited. Well, the question on that issue is whether they were diligent, not the reasonableness of their... If they had filed within the six months, they would have been diligent. Well, and if they would have filed in late 2009 or any point in 2011 or for nine months in 2011, that's true. What's the standard of review on the question of equitable tolling? Abusive discretion. So what's your best case, what's your best argument that this is not an abusive discretion by the judge finding that equitable tolling doesn't apply in this case, assuming that equitable tolling is available? In the... My best case generally is... Best argument. My best argument. I'm sorry. My best argument are the two points, whether the claimant appellant was reasonable or not in remaining ignorant of the filing requirement and whether there was a diligent pursuit of rights. You know, as the district court noted on the first point, the court found that the claimant's purported ignorance was not reasonable since she fails to establish that such ignorance resulted from the errors of anyone other than her own counsel. And what's the case that attributes the errors of counsel in this context to her? Well, I would point to the Keenan v. Bagley case, which both parties cite as saying that the failure to meet a deadline unavoidably rose from circumstances beyond her control. Here, what were the circumstances that led to the failure to file? Her counsel's, well, whether it's prior or current counsel, Mr. Schaefer who didn't inform the agency of the... Was that beyond her control? Well, I would prescribe the beyond control to not just the claimant herself, but to counsel. And when you take on a matter like that, you in many ways stand in the In a civil case, aren't there literally hundreds, if not thousands of cases in the civil context that attribute errors of counsel to the client? You pick the client. You pick the attorney. The attorney screws up. You bear the consequences. That's just what the law says in the civil arena. It may not be fair, but it's what it says. That's my point, yes, that it's not so much whether the claimant did all these things, but it's claimant's counsel. But can you give me a case in equitable tolling? In equitable tolling where it was applied to the individual claimant? Or to the counsel? To the counsel. I mean, I'm looking in the context of equitable tolling where basically the lawyer messes up. Well, and that's... I can't cite to a case, I guess I would make two points. One is, in applying it to the factors for equitable tolling, courts do look at the distinction between represented counsel and pro se counsel. And I think implicit in that is a recognition that when you represent it by counsel, that's different. The factors apply to the counsel. And when you're representing yourself, as was the case actually in Glarner, that the factors are applied differently. I would also add that... I forgot my second point, but I think that's the principal point, is that it's... That's, as Judge McKeague pointed out, that's the fact of the matter when you're a representative and an agent of a claimant. Oh, the other point I was going to make. The remedy then becomes, rightly or wrongly, potentially, in one of malpractice, against the counsel. And that is another way that claimants, in case of errors by counsel, are protected, even if they lack the actual knowledge. Is it your position that equitable tolling does not apply? It is my position that equitable tolling is inapplicable to the Federal Tort Claims Act. I understand... Period. Period. I understand there is a circuit split. I understand the Ninth Circuit recently reversed itself on that issue.  It's not the case. It's not the case. That's an argument and an alternative for me. I would ask that the Court, if it chooses to reach that issue and reverse Glarner, I would suggest it do so. And the alternative, if equitable tolling is applicable, that the District Court did not abuse its discretion in declining to apply it here. We're a panel. We don't get to reverse other panels. You want us to say that John R. renders Glover inapplicable because the Supreme Court has ruled in the interim? Correct. That there's been intervening case law from the Supreme Court. That's correct. And yes, so if equitable tolling is available, the District Court did not abuse its discretion. I think it's important to point that it is the appellant's burden to show that she met the factors required to apply equitable tolling here. Thank you very much. Let me ask you this question. The other side suggested it should have been decided on summary judgment, not 12B1. I think appellant cited the wrong legal standard in the brief. I think it is a 12B1 jurisdictional argument, not a... Well, only if it's a jurisdictional requirement. I mean, under Glorner, it's not. Well, on the issue of whether equitable tolling is available, that's true. But the principal issue of whether there's been a waiver of sovereign immunity as to whether the government has complied with the Federal Tort Claims Act in the date of mailing, that is still jurisdictional in a 12B1 motion because there's no waiver of sovereign immunity to sue beyond the statute of limitations. Well, but either it's jurisdictional or it's not. And you're asking us to say that Glorner is no longer good law. Yeah, but yes, the jurisdictional arguments relevant to whether Glorner is good law or not is only one of the factors relevant to whether the court should revisit Glorner in light of the John R. Sand case. Before that, the issue of sovereign immunity is a jurisdictional... is a 12B1 motion. I would submit that in the alternative it would be a 12B6, not a Rule 56 summary judgment issue. It would be a failure to state a claim if you don't agree that it's a sovereign immunity issue. In this case, it's a 12B1 motion to dismiss. Thank you. Thank you. Serafini? Your Honor, I'll just make my rebuttal points in regard to the doctrine of equitable tolling. And I take issue with any... with the argument that there's some indication under these facts that we had actual constructive notice of the denial of the filing requirement. There certainly is no indication in the record whatsoever that we had any actual notice. I think it's admitted by the government that we couldn't have had it, and we certainly don't have constructive notice of it. The phone call from the agency indicating the claim was still being considered does not give you any indication that they were ready to issue a denial. That was not the point of the phone call. In fact, why would you even ask me to submit a second claim, although I didn't quite understand it, if you intended to just go ahead and summarily dismiss the claim or deny the claim, I guess is the better way to put it. And I'll take it from there. Why wouldn't it have been appropriate to ask you to submit another claim to show that you were the attorney of record if in fact that's what they understood you to be saying? I would have... I've been confused all along. First of all, I thought you were saying you took over the case, you're the attorney of record. Today you're saying, no, no, you're not the attorney of record. The first attorney was still the attorney of record. You were just handling the case for them. I was primarily handling the case, and I had been since I took over the no-fault case. But my point is that that really is not, I don't think, the issue here. The issue here is that it didn't make any difference. The Gersten firm didn't get the notice. They didn't send it to them, and they didn't do anything to follow up with them. They did send it to them. Well, they didn't... I'm sorry. It wasn't delivered to them. But now it wasn't communicated to them. On equitable tolling, this is what Judge White was asking your opposing counsel about, is it a legitimate consideration, one way or the other, to take into account that the firm of record did not notify ICE that they had moved? Is that a legitimate factor in connection with the abuse of discretion standard the district court employed? I don't believe so, because there's an affidavit in file that really stands unrebutted that they put in a change of address notice as required with the U.S. Postal Service. Why they didn't put that in the envelope, I don't know. As required by the U.S. Postal Service. Where does the Postal Service require that? They put in a change of address with the U.S. Postal Service, and for whatever reason, and I apologize if I didn't say this correctly, for whatever reason, the U.S. Postal Service didn't put that change of address notice on that letter when it was returned to the government. I can't explain that. That usually expires after so many days, that change of address that the post office has. The indication in the affidavit submitted as part of the lower court record was that that firm was continuing to get forwarded mail at the time frame that this took place, and I really can't explain why the Postal Service did not put that indication on there. Let's go back to the question. The question is, in connection with equitable tolling, and whether the district judge abused his discretion in this case, is the question of whether the law firm had a duty to do something more than rely upon the post office a legitimate consideration? I think that if you look at it in hindsight, would we be standing here if they had sent that out to the government? One would have to honestly, with integrity, say probably not. But it's not the only scenario where this has taken place. The Verti case, it's a factor. I think it's a factor. You two probably obviously disagree with me. But it is a legitimate factor that they screwed up. I think that it's a factor that that wasn't done. But I think that the issue was, from their perspective, they did what I think most firms do. They put in a change of address, and the mail gets forwarded. That's what ends up happening. I think that's what they did in this particular case. That's what the affidavit indicates. And it's reasonable for a firm of that size to do that. Did they notify the State Bar? Yes. Absolutely. In fact, I would submit to your honors that the conversation that took place, that had to have taken place and didn't, in fact, according to their affidavit, take place with the agency, took place after they moved. And the agency had a phone number for that firm and had a phone number for my firm. It's not asking the agency to be familiar with the State Bar of 50 states. All it was was a phone call. Just a second. To make sense of this. When they sent in the notice of claim, it would have had a phone number. Right. After they moved, I assume they kept the same phone number. Absolutely they did. So if then, for whatever reason, this paralegal calls that firm, they're now at a new address, at that point, if somebody says, I don't know anything about this, call Serafini. At no point in that does that put anybody on notice as to what your address is or whether you're the new attorney of record or they're still the attorney of record, does it? I can only give you my experience with that situation because I handle a lot of files with that firm. And my experience is that they give my information out in total. Not just the phone number. But my name, my address, my firm name. It's given out in total to those individuals. But they didn't change who was the attorney of record with ICE. I agree with that. And you're contending that you are not the attorney of record even though you're the one that's principally handling the file. I'm principally handling the file. But my real contention, Your Honor, is that the notice was not delivered to anyone. It was a one-attempt send-out. It came back and there was nothing further done to communicate the notice of denial. So under equitable tolling, how could then we be placed on notice that that 6-month period of time began to run? And I don't think that that's fair and I don't believe that it complies with the purposes of the FTCA. Well, you don't get equitable tolling every time you don't have actual notice, right? I don't think that there's any case law that says that, Your Honor. What I think that you have to look at is a fact-by-fact situation under the 4 points set out in the Andrews case. And I think that if you look at those 4 points under these circumstances, this is not to dismiss this case and deny this woman her day in court in a non-disputed, absolute liability in the government accident where she did not have notice and no one could possibly have known that that was the case. And I think that that note at that time when it had begun to run does not support the purposes of the FTCA. And one last question. Do you have cases that talk about when you're applying equitable tolling what you do about attorney error? I have not seen a case that really focuses on that issue as brother counsel said. So I don't. All right. Thank you. The case will be submitted.